UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

David Stebbins                              )
     Plaintiff/Appellant                )
                              )
v.                                         )          Case No. 25-2008
                              )
Rumble, Inc., et al                        )
     Defendants/Appellees               )

## SUPPLEMENT TO INFORMAL OPENING BRIEF

Comes now, pro se Appellant David Stebbins, who hereby submits the following Supplement to Informal Opening Brief in the above-styled action.

### The transfer never actually happened, so the case is still in Delaware and, therefore, still appealable here.

1.      First, the Court is concerned with whether it has jurisdiction to even hear this appeal, as transfers of venue are typically only appealable by writ of mandamus. The Court even explicitly said that the aforementioned jurisdictional matter is still part of this appeal after it reopened it.

2.      The Court's basis for believing that it no longer had jurisdiction over the matter except by writ of mandamus is based on the fact that the case was transferred to outside the Third Circuit. However, that is actually not true. The District Court *attempted* to transfer the case, but that transfer did not go through. ECF 16 in the district court proceedings documents this error.

3.      Therefore, the case is still in Delaware for all intents and purposes. Therefore, there is no longer any jurisdictional defect.

### The Court can treat this appeal like a petition for writ of mandamus.

4.      In the event this Court disagrees with my interpretation of ECF 16 and the corresponding error in transferring, let's also not forget that I am pro se. So unless the Court has reason to believe that I am deliberately and maliciously ignoring standard court protocol, the Court can, pursuant to the precedent of Haines v. Kerner, 404 US 519 (1972), elect to treat the appeal as a petition for writ of mandamus and, if it sides with me on the merits of the dismissal of Rumble as a party, order the District Court to re-accept jurisdiction. Kind of like the June 25, 2020 order of

the California Court of Appeals in Case No. A156895 (Bikkina v. Mahadevan)[1], where the Court said "[i]t is unclear whether the trial court's orders are appealable, but we shall exercise our discretion to treat this appeal as a petition for writ of mandate."

5.      Barring that, there is no statute of limitations for petitioning for a writ of mandamus, so if worst comes to worst, if the Court sides with me on the issue of Rumble being dismissed as a defendant, I can simply file a new petition for writ of mandamus to compel the district court to re-accept jurisdiction.

### Rumble can be vicariously liable under Anderson v. TikTok

6.      So now we turn to whether it was reversible error for the district court to dismiss Rumble as a defendant. This decision turns on whether Rumble can be held vicariously liable for the slander. The District Court's entire basis for claiming that it can't be held vicariously liable is because it is immune under § 230 of the Communications Decency Act (or just "§ 230" for short).

7.      Shortly before I filed the lawsuit in Delaware district court, this Court had issued a bombshell ruling called Anderson v. TikTok, Inc., 116 F. 4th 180 (3rd Cir. 2024), which created an important exception to § 230, holding that the website is considered to be a "publisher" if it materially contributes, through its algorithm, to the offending material being distributed across its site. For TikTok, they do so by placing the video on other users' "For You Page," or FYP for short.

8.      In the instant case, I alleged in the Complaint that Rumble had materially contributed to distributing the Defendant's slander content by promoting the video containing it on their home page as well as their suggestions feed, both of which advertised the video to other users without any direct input (such as search terms) needed from those other users.

9.      Therefore, it is not frivolous that Rumble can be vicariously liable for the slanderous content.

### My allegations that Rumble had materially contributed to the slander is not speculative.

10.      In a nominal effort to acknowledge the at-the-time brand new precedent of Anderson v. TikTok, the District Court tried to argue that my Complaint fell short because my allegations that Rumble had promoted the slander video using its algorithm were "speculative." She never explained exactly what she meant by "speculative."

---

1   Which you can read here: https://scholar.google.com/scholar_case?case=18278664717528385674

11. The allegations are not speculative. I alleged that the odds are "nearly 100%" that Rumble had, however nominally, distributed the video. That is not speculative. That is a darn near certainty. Therefore, the District Court's judgment should be reversed and Rumble should be reinstated as a defendant.

**The deficiency could have been cured by amendment.**

12. Next, the District Court arbitrarily declared that the deficiency cannot be cured by amendment. However, just like in the related Case No. 25-2007, she gave absolutely no explanation whatsoever as to how she reached the conclusion that amendment cannot cure the deficiency. She wanted to make sure the matter was definitively terminated, but just like in the related case, she knew she couldn't justify such a ruling on the merits, and so just like in the related case, she didn't even try to.

13. Therefore, just like in the related case, this Court should vacate her decision and require her to either explain her ruling (so I can then appeal it again) or change it.

**New admissions from Rumble have come to light which make their contribution to the slander far less speculative than they previously were.**

14. But even barring all of that, there is new evidence that is worthy of re-introducing Rumble as a co-defendant.

15. In Related Case 1:24-mc-00478-MN, Rumble has appeared and filed a Motion to Quash the subpoena. See ECF 30. In their Brief in Support of said motion (ECF 31), they stated in pertinent part that "Rumble has made the ***editorial decision*** to permit its users to post on rumble.com anonymously, consistent with their own First Amendment rights." See id at 16 (emphasis added).

16. So now, Rumble has now admitted directly to making "editorial decisions" which contributed no small amount to emboldening the likes of Doe to make tortuous statements about me (including but not limited to defamation) that they otherwise would not make for fear of liability (not just for fear of getting sued, but reasonable fear of actually losing said lawsuit).

17. Now, it is no longer speculative. Now, it is proven by Rumble's own admission that they have made "editorial decision[s]" contributing to Spectre's streams. This alone justifies

abrogating Rumble's Sec. 230 immunity and holding them jointly liable for the slander.

18.    Therefore, the Court should reverse the decision of the District Court and include Rumble as a co-defendant.

**There is reasonable grounds to suspect that the District Judge may be vindictive against me, worth at a minimum an investigation.**

19.    As one final ground for reversal, there is reasonable grounds to believe that district judges all over the nation (including this judge) have a vendetta against me for exercising my right to access the courts a bit more frequently than they would prefer. At a minimum, there is enough grounds for suspicion as to warrant a closer look by this Court.

20.    On May 1, 2026, I attended via zoom a Case Management Conference in Case 4:23-cv-00321-MMC (Stebbins v. Redfield) in the US District Court for the Northern District of California, before Senior Judge Maxine Chesney. That conference was audio recorded by the Court.

21.    I now have a copy of the recording, but I don't know if I'm allowed to disseminate it. If the Court orders me to produce the audio recording, I will. Alternatively, the Court can order its own copy for a fee of $34 by going to this URL: https://cand.uscourts.gov/forms/cand-audio-recording-request

22.    At the end of our conference, I asked Judge Chesney about the delays, since she was guilty of a few of them herself. She proceeded to admit, out loud, that this is what I get for filing so many pro se lawsuits that "aren't worth very much." She never said my lawsuits were frivolous, just that there was a large quantity of them, and the judges believed them to be "not worth very much." But if I am entitled to even $1 in damages, that still means that the lawsuit was technically meritful.

23.    Therefore, if these repeated, habitual delays are in fact the result of judicial vindictiveness against me for the number of lawsuits I have filed, then that is a naked retaliation of my constitutional right to court access.

24.    I even explained as much in my "Supplement to Case Management Conference Minutes, which I filed in that case on May 4, 2026. See **Exhibit A**. Notice especially how I explain how it logically follows that this vindictiveness is also considered when they decide the merits and, ulti-

-4-

mately, how this creates a self-fulfilling prophecy, and how that self-fulfilling prophecy results in me being declared a vexatious litigant when I don't deserve it.

25. On May 5, 2026, Judge Chesney entered a vague order, stating only that my Supplement "does not accurately reflect the Court's comments," but never specifying exactly what the correct comments were. See **Exhibit B**. So I ordered my own copy of the audio recording at the above URL, and I then filed a Motion to Clarify pointing out that everything at the end of that conference was exactly as I previously described it, and I even provided relevant timestamps to prove my claim. See **Exhibit C**. Like I said, I'm not sure if I'm allowed to disseminate the audio recording, sot he Court can either (A) obtain a copy of the audio recording itself, or (B) order me to share my copy with the Court, at which point I would have to obey.

26. So what does that have to do with the instant motion? Well, in this case in particular, there is additional evidence that suggests that District Judge Maryellen Noreika is included in this widespread vindictive attitude towards me. Namely, in addition to the fact that she waited five whole months to bring my cases current (and only did so when I filed a Petition for Writ of Mandamus in Case No. 25-1672 in this court), but when she finally did, she denied without prejudice my Petition for Subpoenas with no explanation given whatsoever. I appealed that, and the Court vacated the judgment in Case No. 25-2007.

27. However, when this Court overturned her judgment, it didn't force her to grant the petition, only to explain her reasoning. Yet she still granted the petition. This indicates that she knew her reasoning for denying the petition was legally untenable.

28. Was it specifically because of my litigation history? Well, the evidence tends to suggest that it was, for two reasons: (1) She had never met me before, and I had never filed anything in her court before that petition and this lawsuit, and (2) When I appealed the matter, Google filed an Appellee Brief, but the only thing they raised was the fact that I had a long and prolific litigation history[2]. The implication there was that the mere fact that I had that history was grounds enough to affirm the judgment, thereby implying that they are aware of this vindictiveness

---

2  While it is true that this Court "acknowledge[d] that the response brief addressed no relevant issue... and was unhelpful in resolving the appeal," and I certainly grateful for that, Google's boldness is filing a Response Brief in that case JUST to educate the Court of that one thing is still suspicious.

towards me and actively endorse it. This, in turn, proves that there is indeed a pattern of vindictiveness for them to even be aware of.

29.     Therefore, the Court should, at a minimum, launch in inquiry into Judge Noreika, in order to answer the following questions, among others:

(a)     What was the reason for the 5-month delay complained about in the related case for a petition for writ of mandamus;

(b)     Will this pattern of delay continue;

(c)     What was the reason for her initially denying the petition for subpeonas? And why didn't she include that reason in the original order?

(d)     If it was indeed, even partially, because of spite towards me for having exercised my First Amendment right to court access a bit more than they feel I should have, will this feeling of vindictiveness also influence her judgment in other matters?

(e)     Should that require the district judge's recusal on the grounds that he has "reveal[ed] such a high degree of … antagonism as to make fair judgment impossible" as defined by Liteky v. United States, 510 US 540, 555 (1994)?

30.     And if all the judges in the entire country are likely to have this degree of antagonism (as evidenced by the fact that this happens in almost every lawsuit I file, in almost every district), to the point where recusal becomes a waste of time, then that may mean that this Court may have to impose special, ongoing requirements on district court judges in this circuit[3], such as...

(a)     requiring all district judges in the 4th Circuit to rule on all matters in my cases within 35 days of them being filed, and

(b)     to protect me from wholly arbitrary judicial rulings, requiring the judges to address, in their written orders, every argument I raise in my briefs, oppositions, and replies, with each address containing...

    i.      specific findings of fact,

    ii.     with references to evidence on record or facts which are judicially noticeable to support said findings of fact,

---

3   This includes the federal judges in New Jersey, since a related case – Case 1:24-cv-01174-MN in Delaware – is currently set to be transferred there. See ECF 10 & 11 in that case.

iii.    specific conclusions of law, and

iv.    specific citations of law (e.g. case law, statute, executive regulation, etc.) to support said conclusions of law.

31.    If every judge in the country has this degree of antagonism towards me, such drastic protections may be necessary to protect me from unconstitutional judicial vindictiveness. By that point, recusal would be a waste of time, since it's a foregone conclusion that the judge to replace him would simply be a judge who is just as vindictive as the last one.

32.    At a minimum, the pattern of delay, across multiple districts, is pervasive enough that it warrants investigation.

### Conclusion

33.    Wherefore, premises considered, I respectfully pray that the judgment of the District Court be overturned, and for any other relief to which I may be entitled.

So requested on this, the 3rd day of June, 2026.

*/s/ David Stebbins*
David Stebbins (pro se)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
870-204-6516
acerthorn@yahoo.com